OPINION OF THE COURT
John G. McCarthy, J.
In this CPLR article 78 proceeding petitioner seeks to set aside and annul the determination of the respondent, Board of Commissioners of the Riverhead Fire District, which denied his application to become a volunteer fireman. The petition is granted to the following extent.
On February 23, 1986, petitioner submitted an application to the Riverhead Fire District for membership as a volunteer fireman in Reliable Hose and Engine Company No. 1. The petitioner has a hearing impairment and wears hearing aids. The fire company approved the petitioner’s application and *984 forwarded the application to the Board of Fire Commissioners for their approval or disapproval. By letter dated August 19, 1986, the Board rejected the applicant for membership based upon the petitioner’s hearing impairment.
After the rejection letter, the Board continued to accept further submissions concerning the petitioner’s hearing impairment, but failed to render a final decision based upon these submissions.
Petitioner brought an article 78 proceeding to compel a determination. By order dated June 9, 1987, this court remanded this proceeding to the Board for a new determination on petitioner’s membership application, based upon a consideration of those further submissions.
By resolution dated April 19, 1988, the Board again rejected the petitioner’s application finding that the applicant’s lack of hearing created unnecessary risks to himself and those around him; that two other fire companies within the fire department rejected this applicant by reason of his handicap; that the commissioners individually and collectively "know” that even with hearing aids the applicant cannot hear; and that based upon the commissioners’ collective experience in firemanic activities, the fire service is not an activity that should be undertaken by someone who is deaf.
Petitioner now renews his article 78 proceeding seeking to reverse the Board’s denial of his application for membership contending that the Board’s determination is arbitrary, capricious, discriminatory and an abuse of discretion.
The election and appointment of volunteer members of a fire company are governed by Town Law § 176-b, which provides, in pertinent part: "2. The board of fire commissioners shall appoint residents of the fire district as the volunteer members of any newly organized fire company. Thereafter, the fire company may elect other eligible persons, including fire district officers, as volunteer members. The election shall be pursuant to the by-laws, if any, of the fire company; otherwise, by a three-fourths vote of the members of the fire company present and voting at a regular or special meeting thereof. The membership of any person so elected shall become effective when approved by resolution of the board of fire commissioners. Membership shall be deemed to have been approved pursuant to this subdivision in the event that no action is taken by the board of fire commissioners, either approving or disapproving, within forty days after service of written notice *985 of election to membership shall have been made by the secretary of the fire company upon the secretary of the board of fire commissioners, either personally or by mail.”
Thus, the Board of Commissioners, as the governing body of the Fire District, has the discretion and authorization to approve or disapprove any person so elected for membership in a fire company. However, the Board does not have unfettered discretion as Town Law § 176-b (16) and (3) expressly prohibit membership in a fire company to a convicted arsonist and, unless district regulations provide otherwise, to nonresidents.
Indeed, this discretion is also limited by antidiscrimination statutes. It is an unlawful discriminatory practice for any fire department or fire company through any member or members, officers, Board of Fire Commissioners or other body or office having power of appointment of volunteer firemen, directly or indirectly, by ritualistic practice, constitutional or bylaw prescription, by tacit agreement among its members, or otherwise, to deny to any individual membership in any volunteer fire department or fire company therein or to expel or discriminate against any volunteer member of a fire department or fire company therein because of the race, creed, color, national origin, sex or marital status of such individual. (Executive Law § 296 [9] [a].)
Further, it is an unlawful discriminatory practice to discriminate against a hearing-impaired person who has a hearing impairment manifested by a speech discrimination score of 40% or less in the better ear with appropriate correction as certified by a licensed audiologist or otorhinolaryngologist (ear, nose, and throat specialist). (Executive Law § 296 [14].)
Here, on the record submitted, there is no finding by the Board that the petitioner has a hearing impairment in accord with requirements provided by Executive Law § 296 (14). in fact, there is conflicting evidence as to the exact nature and extent of the petitioner’s hearing impairment. Two physicians who performed physicals on the petitioner at the behest of the Fire District indicated different levels of hearing impairment. The physical exam report issued August 11, 1986 by Dr. Iacono indicated that the petitioner was "deaf’ and remarked the patient was "physically able for volunteer work under restrictions because of a hearing problem.” The other physical exam report issued April 6, 1988 by Dr. Chwatsky indicated the petitioner had a "hearing deficit” and remarked the *986 petitioner is "fit for duty not directly related to entering burning buildings.”
In support of his application for membership, and at the request of the Fire District, the petitioner submitted further evidence as to the extent of his hearing impairment. By letter dated September 15, 1986 from Miracle-Ear Hearing Aid Center, the petitioner was found to have a "hearing loss”, but with "the assistance of hearing aids is a functional, well adjusted person.” This report was qualified by letter dated February 20, 1986 indicating that the petitioner has a "severe hearing loss” in both ears, and was fitted with two new hearing aids and is capable of "understanding most words.”
Based on all the petitioner’s examinations by both the Fire District and petitioner’s hearing specialist, there is no consensus of opinion among the examiners as to the exact nature and extent of his hearing impairment. It is apparent that the petitioner has some degree of hearing loss, but the extent of that loss is unclear.
More importantly, there is no showing or finding by the Board that the petitioner has a hearing impairment manifested by a speech discrimination score of 40% or more in the better ear with hearing aids, as certified by an audiologist or otorhinolaryngologist (ear, nose, and throat specialist) that would exclude him from the protection of the antidiscrimination statutes. (Executive Law § 296 [14].)
Equally important, the Board has also failed to articulate how the petitioner’s hearing impairment precludes the petitioner from performing volunteer firemanic activities.
Under Executive Law article 15 (Human Rights Law), it is not enough for the Fire District to show that the applicant’s physical impairment is somehow related to the duties he must perform in the position sought. Nor is it sufficient to show that the impairment precludes the applicant from performing the duties in a perfect manner. The statute bars discrimination against an impaired individual who is reasonably able to do what his position requires. Unless it is shown that the applicant’s physical condition precludes him from performing to that extent, the disability is irrelevant to the job and can form no basis for denying him the position. (Matter of Miller v Ravitch, 60 NY2d 527.) Evidence of other hearing-impaired individuals currently serving as volunteer firemen and officers belie the Board’s finding that the fire service is an activity that should not be undertaken by someone who is hearing impaired.
*987 Accordingly, the matter is remanded to the Board of Commissioners of the Riverhead Fire District for a hearing specifically on the issue of the extent of the petitioner’s hearing impairment. In the event that the petitioner has a hearing impairment manifested by a speech discrimination score of 40% or less in the better ear with the appropriate correction as certified by a licensed audiologist or otorhinolaryngologist, then the Board is directed to grant the petitioner’s application for membership.